CRUZ FLORES v. ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY ET AL.

Decided October 24, 1900.

**1. Negligence—Action for Death Against Railway Company.**

In an action against a railway company for negligence causing death, it must be shown that the defendant owed the deceased a duty, and that it failed to exercise the degree of care required by law in the discharge of that duty.

**2. Same—Negligence Not Shown—Child Trespassing on Track.**

See the opinion for facts held insufficient to authorize a verdict against a railway company for the death of a child of six years who had gone beneath cars standing on a side track at a point not a public crossing and was run over when the cars were put in motion.

APPEAL from El Paso. Tried below before Hon. J. M. GOGGIN.

*Beall & Kemp*, for appellant.

NEILL, ASSOCIATE JUSTICE.—This suit was originally brought on the 12th day of September, 1898, by Juan Flores, an infant, by his father, Cruz Flores, the appellant, for personal injuries alleged to have been inflicted by the negligence of appellees upon Juan. On February 19, 1900, the appellant, Cruz Flores, filed his first amended original petition, suggesting the death of his son Juan, and making himself the real party plaintiff. He alleged that since instituting the suit his son died, leaving as his only heirs the appellant and Sira Montez Flores, the deceased's mother. As his cause of action the plaintiff alleged, in substance, that on the 23d day of June, 1898, the defendants, for the purpose of handling their cars and traffic, had a certain railway track within a few feet of where plaintiff and his family resided in a populous part of the city of El Paso, where numerous persons and many young children lived; that the track for a distance of about a mile passed in front of where plaintiff's family and other people resided, and between it and the principal part of said city, to reach which from plaintiff's residence, it was necessary to cross said track. That going to and from the neighborhood in which plaintiff lived, the people and the public generally for a long time had been accustomed to cross said track, and had thereby acquired the license and permission of defendants to do so at or near the point where the accident occurred; that for several days prior to the injury and at the date thereof, the defendant had negligently permitted to stand on said track and in front of the settlement where plaintiff then lived, a string of cars without openings between them, and close together; that the place where the cars were so placed was uninclosed and unguarded, and, with the cars so placed, attractive to children and dangerous upon which to handle cars without a proper lookout and precaution to guard against accidents to children. The defendants knew that numerous people with their families and children of tender years resided there, and also knew that the

cars had been placed and had stood there, and that under the existing conditions it was necessary to use a high degree of care in moving said cars to avoid injury to persons crossing said track, especially children; that there was no guard, lookout, or precaution used to avoid such accidents; that on the date of the accident said infant was either attempting to cross the track as he had a right to do under said license, or was playing on or near the track, having been attracted there by defendant's negligence in leaving the cars as they did on the said track, and that defendants, without giving signals of warning, or without having a proper lookout, moved the cars and ran over the child, which was then about 6 years of age, and so injured his arm that it became necessary to amputate the same at the shoulder.

The defendants, after interposing general and special exceptions which seem not to have been acted upon, answered by a general denial, and specially, that if Juan was injured in the manner alleged by plaintiff, and if said injury occurred at said time and place, said track and cars belonging to defendants and were where in law they had a right to be, and where they had been standing for many days prior to the accident; that if Juan was injured, the injury was occasioned by his own act of negligence in going under one of the cars mentioned in plaintiff's petition, and placing himself in such a position as to be obscured from the sight of those who were in charge of and operating the engine and cars of defendants. That defendants, their agents and servants, did not see Juan while under the car, and it would have been impossible for them to have seen him unless they or some one had gone ahead and examined underneath each car in order to determine whether he was beneath the same. That Juan was not injured at a crossing, passway, or other place where he or the public had a right to cross or pass along said track, which track was in their yards in El Paso, and used daily for the purpose of storing and switching their cars, and that Juan should have known when he went beneath the car that the cars were likely to be moved at any moment, and if moved, he was in danger of being injured by being run over by them.

Upon hearing the evidence, the court peremptorily instructed the jury to return a verdict for the defendants, and it is from the judgment entered upon a verdict returned in obedience to such instruction this appeal is prosecuted.

*Conclusions of Fact.*—The evidence shows beyond question that on the 23d day of June, 1898, Juan Flores, the son of appellant, an infant about 6 years old, was injured by being run over by one of appellees' cars, in such a manner as to necessitate the amputation of his arm at the shoulder; that in the following February he died from what was supposed to be smallpox, leaving appellant and his mother, Sira Montez Flores, his sole surviving heirs. That at the time and long prior to his injury the appellees owned and maintained for the purpose of placing, storing, and switching on and from its cars used in the conduct of its business, a track about three-quarters of a mile long, situated in the

city of El Paso between the main business part of the city and where appellant with his family resided, and about fifty yards from his residence. There were about ten families whose residences were constructed below and scattered along the entire length of the track, which separated them from the principal part of the city. There was no public crossing or pathway established by law or custom on this track. The people residing in the neighborhood of appellant, in going to the city, were accustomed to cross the track when they pleased at any place where it was convenient for them to do so, and sometimes would cross by going between or under cars standing and coupled together on the track. But there was no particular place along the track used by such inhabitants or others for crossing more than another. The evidence does not show that appellees or their servants knew that people were wont to cross the track by passing between or under cars standing upon it as before stated, but they did know that people went across it in going from their homes to the city and returning. No consent, either expressed or that can be implied from their actions, was given by appellee to the public or people in appellant's neighborhood to cross said track anywhere along its entire length. Nor does the evidence tend to show that appellees or their servants knew that children of tender years were accustomed to play upon the track or go under cars standing thereupon. When appellant's son Juan was injured, as before stated, a string of cars about half a mile long was upon the track in front of appellant's house, and while the boy and his brother were under one of said cars without any right or permission from appellees or their servants, an engine operated by appellees' employes, who did not know that Juan or anyone else was under any of the cars, and had no reason to believe that he or anyone was in such perilous position, without negligence propelled the engine against said cars in the performance of their duty to appellees, thereby moving the string of cars, and injuring Juan in the manner afore stated.

*Conclusions of Law.*—The question to be determined is, did the court, upon these uncontroverted facts, err in peremptorily instructing a verdict for defendants? To constitute negligence it must be shown (1) that the defendants owed the injured party a duty, and (2) that they failed to exercise the degree of care required by law in the performance of that duty. Railway v. Morgan, 92 Texas, 102. The appellant's son being a trespasser upon appellees' track without their knowledge or that of their servants operating the engine, the law did not impose upon them the duty of exercising any care to ascertain his position of peril before driving the engine against the string of cars he was under. Douglas v. Railway, 90 Texas. That the appellees had the right to place and have their cars standing upon the track, and that they were not negligent in exercising this right, can not be denied. Railway v. Rogers, 91 Texas, 56, 40 S. W. Rep., 956; Railway v. Knight, 91 Texas, 663, 45 S. W. Rep., 557; Railway v. Harris, 53 S. W. Rep., 600. When, as in this case, the undisputed evidence wholly fails to show negligence

on the part of the appellees or either of them, and excludes every reasonable hypothesis of its existence, but is such that reasonable minds can, from it, form no other inference or conclusion than that they were not guilty of negligence, it is the duty of the court to give the jury such an instruction as is here complained of by appellant. Sanches v. Railway, 88 Texas, 117; Railway v. Ryon, 80 Texas, 59; McDonald v. Railway, 86 Texas; Washington v. Railway, 90 Texas, 319; Railway v. Faber, 77 Texas, 153; Crawford v. Railway, 89 Texas, 92; Haass v. Railway, 57 S. W. Rep., 855; Douglass v. Railway, supra.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.