SAN ANTONIO BREWING ASS'N v. WOLFSHOHL.†

(Court of Civil Appeals of Texas. San Antonio. March 5, 1913. Rehearing Denied April 2, 1913.)

1. EVIDENCE (§ 539*)—OPINION EVIDENCE.

Where plaintiff, who was injured by catching his hand in spools over which he was guiding a rope, had never seen another similar machine, and testified that he had never thought of a guard until after the accident, it was error to admit evidence by him that there should have been a cover over the spool and a lever to guide the rope.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2349–2352; Dec. Dig. § 539.*]

2. MASTER AND SERVANT (§ 286*)—INJURIES —JURY QUESTION.

In an action for injuries by catching plaintiff's hand in spools while guiding a rope on them, whether defendant was negligent in not covering the spool or furnishing a lever for the rope, or in not having the switch which controlled the machine nearer to it, held a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

3. EVIDENCE (§ 470*)—OPINION EVIDENCE— EXPERT TESTIMONY.

Where the facts, which were placed before the jury, were such that it could form its own opinions on them as well as an expert witness, opinion evidence was not admissible thereon.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2220; Dec. Dig. § 470.*]

4. MASTER AND SERVANT (§ 217*)—ASSUMED RISK—KNOWN DANGER.

Where plaintiff, injured by catching his hand in spools while guiding a rope on them, knowing that he could not reach the switch, which controlled the machine, from his position near the spools, in order to stop the machine if he caught his hand in the rope, which he knew might happen, he assumed any risk from the location of the switch.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*]

5. MASTER AND SERVANT (§ 289*)—INJURIES —CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

In an action for injuries by catching plaintiff's hand in spools while guiding the rope on them, whether plaintiff was guilty of contributory negligence causing the injury held a jury question.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

6. MASTER AND SERVANT (§ 227*)—CONTRIBUTORY NEGLIGENCE—"INADVERTANCY."

Inadvertancy is synonymous with inattention, heedlessness, carelessness, negligence, and thoughtlessness, so that a servant cannot recover for injuries caused through his own inadvertence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 668, 669; Dec. Dig. § 227.*

For other definitions, see Words and Phrases, vol. 4, pp. 3488, 3489.]

7. MASTER AND SERVANT (§ 85*)—MASTER'S DUTY.

An employer is not required to foresee the negligence of an employé and guard against it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 136, 139, 140; Dec. Dig. § 85.*]

8. NEGLIGENCE (§ 65*)—"CONTRIBUTORY NEGLIGENCE."

Contributory negligence is such an act or omission of plaintiff, amounting to a want of ordinary care which, concurring or co-operating with defendant's negligent act, is the proximate cause of the injury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 83, 94; Dec. Dig. § 65.*

For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes
† Writ of error pending in Supreme Court.

9. NEGLIGENCE (§ 97*)—COMPARATIVE NEGLIGENCE.

The doctrine of comparative negligence is applicable only to common carriers, being made so in that case by statute, and in every other case contributory negligence is an absolute defense, however negligent defendant may be.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 93, 162; Dec. Dig. § 97.*]

10. NEGLIGENCE (§ 136*)—JURY QUESTION.

While negligence is usually a jury question, yet, where the facts have been found, it then becomes a question of law as to whether they are sufficient to constitute negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. § 136.*]

Appeal from District Court, Bexar County; T. T. Vander Hoeven, Special Judge.

Action by Henry Wolfshohl against the San Antonio Brewing Association. Judgment for plaintiff, and defendant appeals. Reversed, and judgment rendered for defendant.

Newton & Ward and Terrell & Terrell, all of San Antonio, for appellant. Webb & Goeth and W. H. Kennon, all of San Antonio, for appellee.

FLY, C. J. This is a suit for damages arising from personal injuries, alleged by appellee to have been inflicted through the negligence of appellant. Appellant answered by general and special exceptions, general denial, and pleas of contributory negligence and assumed risk. The cause was tried by jury and resulted in a verdict and judgment for appellee for the sum of $7,500.

The evidence showed that appellee had for years, at intervals of time, been operating an electric machine which was propelled by a dynamo. It was used for moving cars so as to load or unload them. On the day appellee was injured, he was ordered to get the machine ready to move a car. The machine had what are called two spools, the smaller about four or five feet from the floor, the larger one several feet higher, and a rope worked on those spools. A man was required to stand near the smaller spool and with one hand guide the rope which ran therefrom up to and over the larger spool. This was done to keep the rope straight on the spools. The machine was started by manipulating a switch which turned the electricity on and off. The switch was located in a corner, near the door, about four or five feet from where the operator of the machine stood while it was in use. It could not be reached from that position. On the day he was injured, appellee was engaged in guiding the rope which he would grasp and hold until it was too high to hold, then he would release it and grasp it again above the lower spool. While watching for signals, he dropped his hand below the lower spool and grasped the rope, and his hand was caught between the rope and the lower spool, and he was whirled around the spool causing serious and permanent injuries.

[1] The first assignment of error assails the action of the court in permitting appellee to testify, in regard to the machine, that it should have had a cover over the spool and a lever to guide the rope. Appellee admitted that he had never seen a machine like the one belonging to appellant before, and never thought of a guard for the drum, or a lever for the rope, until after the accident. Appellee was not an expert. We think the testimony should have been excluded, and the trial judge must have afterwards so concluded, as he refused to submit the issues as to the spool being covered and a lever being furnished. It is contended that the refusal to submit those matters withdrew them from the jury. The evidence was not withdrawn; and, while the issues connected with it were not submitted, the jury may have considered the testimony in arriving at a verdict. It is true that, when the opinion of appellee as to where the switch should have been located was first given and objected to by appellant, counsel for appellee said, "You may strike that answer out on objection," but it was not stricken out. In the statement of facts appellee stated: "It would have been just as easy to have located the switch closer to the machine; it could have been located right in front of where you stand on the floor, about a foot from your face; if it had been there, I could have reached it and stopped the machine." And in the bill of exceptions it appears that, after it was said the evidence as to the switch might be stricken out, appellee again stated: "And then the switch ought to have been closer to it to reach it." The evidence was merely an opinion of the appellee on a matter about which the jury was just as capable of arriving at a just conclusion as he was.

[2] Whether it was negligent for appellant to not cover the spool, to not furnish a lever for the rope, and to not have the switch closer to the machine were questions for the jury, and yet appellee was allowed to decide them for the jury. As said by this court in Railway v. Sweeney, 6 Tex. Civ. App. 173, 24 S. W. 947: "It was the substitution of the opinion of a witness for the opinion of the jury."

[3] The facts in this case were placed before the jury, and they were of such a nature that the jurors could form opinions in reference to them and draw inferences as well as any witness, even though he had been an expert, and opinions were not properly received. Sweeney Case and authorities there in cited.

[4] The evidence of appellee shows that he had often operated the machine and knew the location of the switch; in fact, he had used it a short while before he was hurt. He knew the distance of the switch from the machine, and knew that he could not reach it

from his station near the spools. He must have known, as well as the master, that he might get his hand entangled in the rope, and that he would desire to stop the machine, Under these circumstances, he must have assumed the risks arising, if there were any, from the switch being near the door. The location of the switch, the situation of the machine, its operation, all were known to appellee; and, if the master could possibly anticipate that its servants would place their hands in such position as to get their fingers under the rope on the lower spool and would need the switch in reach so as to stop the machine, appellee must have anticipated it also. The situation, with all of its possibilities, was as apparent to one man of ordinary intelligence as it would be to another. There was nothing intricate or hidden about the switch, machine, rope, and other objects in the room. Appellee was thoroughly acquainted with everything in the room.

[5] Even if it could, with any reason, be held that appellee did not assume the risk attendant upon his operation of the machine, the evidence undoubtedly shows contributory negligence upon his part. It was his duty to operate the rope by taking hold of it above the lower spool, and in that position it would be a physical impossibility for his fingers to get caught under it. He swore his hand was above the rope, but that statement is utterly unreasonable, in view of the impossibility of a rope uncoiling from the spool, catching the fingers and dragging them on the spool, and clasping them so tight that the man was revolved a number of times about the spool. The hand must necessarily have been caught from below the spool, and the evidence of appellee indicates the manner in which it was caught. The photographs accompanying the record show that the two spools and the rope were on one side of the machine, and the belt, which runs on pulleys, was on the other side. Connected with the belt was a lever which was used to tighten it when it became loose. The lower spool was about two feet ten inches from the floor. When the fingers were caught, appellee swore that his right hand had hold of the rope and his left hand was on the lever tightening the belt, and he was looking out the window to see the signals of the flagman. In reaching across the machine, appellee must have dropped his right hand from above the spool and must have either seized the rope below the spool, or have permitted his fingers to become entangled with it so that his hand was drawn to the spool. Naturally, in leaning across the machine to reach the belt lever, he would bend his body in such a way as to make it possible for his right hand to be below the spool. This is the only reasonable way to account for the right hand having been below the spool, and below it must have been, because it is physically impossible for the hand to have been hurt if it grasped the rope above the spool. Appellee admitted that his hand came down too far, and it must necessarily have come below the lower spool, although he swore: "When I was guiding the rope as it was going up, it caught my hand in the lower spool. When my hand was caught, my hand was above the lower spool; I was guiding that rope and looking out of the window." He seeks to excuse his negligence by this statement: "I couldn't watch the flagman and guide that rope there and be looking out of the window, and my hand came down too far and the rope caught me." That was practically an admission that his own act caused the injury. No other inference than that the negligence of appellee caused the injury can be drawn from the evidence.

While the proposition that "a servant will not be charged with negligence, as a matter of law, where the method adopted is the only one in which his work can be accomplished" may be sound, still the rule would not fit this case, because the manner of operating the rope did not call for bringing the hand in contact with a spool which could not have been touched, except through negligence or carelessness. It is not claimed that it was so high as to render it dangerous. It is certain that the location of the switch did not cause appellee to place his hand in a position which would result in its being caught on the spool. We cannot agree with appellee's proposition that: "It does not follow, as a matter of law, because a servant was injured as a result of his own inadvertent act, that he was guilty of negligence; but the question is one peculiarly within the province of the jury, under all the facts and circumstances of the case."

[6] Inadvertency is synonymous with inattention, heedlessness, carelessness, negligence, and thoughtlessness, and we have seen no authority that holds that, where it is apparent that the injuries were inflicted through the negligence or inadvertence of a plaintiff, he still can recover. None of the cases cited by appellee hold to any such doctrine; but it is the invariable rule that when the servant is guilty of contributory negligence, which is the direct and proximate cause of his injury, he cannot recover, except in cases against a common carrier, to whom the doctrine of comparative negligence is applied. R. S. 1911, art. 6649. There is no question in this case as to the proximate cause of the accident. It is apparent.

It did not take any skill or expert knowledge to enable appellee to realize that, if he took hold of the rope at a certain place, his fingers would be wound up on the spool. Any one would know that, and appellee did not pretend that he did not know it. He admits that the cause of the accident was that he dropped his hand too low. Railroad v. Hester, 72 Tex. 40, 11 S. W. 1041; Railway v. Williams, 72 Tex. 159, 12 S. W. 172; Rail-

way v. French, 86 Tex. 96, 23 S. W. 642; Jones v. Railway, 11 Tex. Civ. App. 39, 31 S. W. 706; Krisch v. Richter, 130 S. W. 186.

In the cited case of Jones v. Railway, the employé was ordered by his foreman to do certain work, and this court held: "The master is not an insurer of the servant against danger ordinarily incident to or arising out of his employment, and the latter will be guilty of contributory negligence if he fails to exercise proper care and vigilance in protecting himself from danger, even when acting under the direct orders of a vice principal. Employés must be regarded as free agents, capable of protecting themselves from dangers that are as open and apparent to them as to their employers; and, where there has been lack of ordinary care and prudence in guarding against such dangers, the employer cannot be held responsible."

[7] If appellee had not allowed his hand to get into a place where it should not have been, and where he knew it should not have been, he would not have been injured, and appellant was not called upon to foresee the negligence and take precaution against it. Railway v. Shetter, 94 Tex. 196, 59 S. W. 533. The very idea of contributory negligence carries with it negligence on the part of the defendant which concurred with that of the plaintiff in producing the result.

[8] Contributory negligence is such an act or omission of the plaintiff, amounting to a want of ordinary care and prudence, as concurring or co-operating with the negligent act of the defendant is the proximate cause of the injuries of which complaint is made. Railway v. Foth, 45 Tex. Civ. App. 275, 100 S. W. 177; Id., 101 Tex. 133, 100 S. W. 171, 105 S. W. 322, which approved of the opinion of this court, except on one point about a charge; Railway v. Henning, 39 S. W. 302; Railway v. Pendleton, 30 Tex. Civ. App. 431, 70 S. W. 996.

[9] The proposition contended for by appellant would apply the rule of comparative negligence to this case, but that rule is applicable to common carriers alone, and applicable to them only because made so by statute. The rule in Texas in regard to all other classes is that, in an action for damages occasioned by injuries resulting from negligence, contributory negligence is an absolute defense, no matter how negligent the defendant may have been, if such contributory negligence was the proximate cause of the injury.

[10] It is true, as contended by appellee, that negligence is usually a question of fact for a jury; but, when the facts have been found, it then becomes a question of law as to whether they are sufficient to constitute negligence. Crawford v. Railway, 89 Tex. 89, 33 S. W. 534; Douglass v. Railway, 90 Tex. 125, 36 S. W. 120, 37 S. W. 1132; Flores

v. Railway, 24 Tex. Civ. App. 328, 66 S. W. 709.

The judgment is reversed, and judgment here rendered that appellee take nothing by his suit and pay all costs in this behalf incurred.