## Texas & Pacific Railway Company v. John B. Utley.

### Decided December 21, 1901.

**1.—Master and Servant—Assumed Risk—Extra Work—Warning.**

Where a servant, at his foreman's request, undertakes work outside his regular employment, he does not assume the risk of extra dangers involved therein where he knows nothing of the hazards of such work, and receives no warning from the foreman, who knew of his ignorance; nor is it necessary, such work being hazardous to the servant, that it should be "extraordinarily dangerous" in order to impose the duty of warning upon the master in such case.

**2.—Same—Servant's Ignorance.**

That the servant voluntarily undertakes the extra work at the request of the foreman does not, where his ignorance of the danger is known, release the master's duty of warning him of the hazard involved.

**3.—Same—Charge of Court.**

Plaintiff's right of recovery not being predicated on the hazards of using a

jackscrew, the court properly refused to charge that if the work of handling a jackscrew in raising a car was not one of great, unusual, and extraordinary danger, then no duty of warning existed, and if. the use of the jackscrew was extra hazardous, and plaintiff and the foreman had equal knowledge of the fact, defendant would not be liable.

Appeal from Parker. Tried below before Hon. J. W. Patterson.

*B. G. Bidwell,* for appellant.

*Stevenson & Ritchie,* for appellees.

CONNER, Chief Justice.—This is an appeal from a judgment in appellee's favor for $545, as damages for injuries sustained by him while at work replacing a derailed car.

As grounds of recovery appellee alleged, in substance, that at the time he was in the employ of appellant as one of a gang of men engaged in crushing rock with a rock crusher; that in accord with the direction of his foreman, W. T. Brannon, he, with others of his gang, assisted the section men, of whom Marion Glenn was foreman, in replacing upon the railway track said derailed car; that such work was extra hazardous, which was unknown to appellee at the time, by reason of his inexperience, and of which he was given no warning; that the day was very cold, and by direction of said foreman a fire had been built on the side of the steep dump where the accident occurred, on the lower side of which an iron rod had been driven in the ground to keep the fire in place, which rod, by reason of its projection and proximity, was dangerous; that while engaged on the south side of said car in raising the east end thereof with a jack screw the car suddenly careened around to the south, knocked appellee off and down said dump, and on said iron rod, whereby he was injured as set forth in his petition. It was also alleged that said foremen were negligent in failing to "watch the progress of raising the car, the effect of the working the lever of the jack screws," and in failing to give warning of the danger.

We think the court properly overruled the demurrers urged to the petition. The principal objections thereto, in effect, seem to be that it does not appear that the danger to be guarded against was unusual and extraordinary, or that appellee objected to doing the work, or that any concealed danger existed in using the jack screw, or that any necessity existed for the foreman to look out for appellee's safety and provide therefor. The work of replacing the displaced car was alleged to be extra hazardous. From the allegations of the petition the dangers involved in' the extra work were certainly beyond those of his regular employment, the risks of which alone he assumed by his contract of service in the first instance. As to appellee the danger attending the work of replacing the car was extra hazardous, and in case of his known inexperience and ignorance, as alleged, it was the duty of the master to notify him of all such dangers as were not apparent. Coal Co. v. Haenni, 35

N. E. Rep., 162; Railway v. Renz, 24 Texas Civ. App., 335; Railway v. Hughes, 22 Texas Civ. App., 134, and authorities therein cited. The fact, under the circumstances alleged, that he voluntarily undertook the work upon the request of his foreman, in no degree lessened the duty of the master. Appellee was not a mere intruder, and in his inexperience and ignorance he was entitled to the exercise of at least ordinary care on the part of the foreman, by warning, by supervisory watchfulness and direction, if need be, as the work progressed, and otherwise to guard him from danger. Nor was it necessary, as insisted, that appellee allege a concealed danger in the use of the jackscrew. This was but a circumstance attending the employment of appellee at the time, and illustrating the manner in which the car was being replaced, but of which no complaint is made in the petition.

What we have said also applies in a measure to assignments questioning the action of the court in giving and refusing charges, and in overruling appellant's motion for a new trial.

There was evidence tending to support the material allegations of appellee's petition, including the averments that the work of replacing the wrecked car was attended with dangers unknown to appellee by reason of inexperience, all of which said foreman had knowledge, and that appellee was placed at such work without having been warned of such danger. The immediate cause of the accident does not seem very clear. W. T. Brannon, the foreman of the rock crushers, testified: "I had been working on the north side, and parties on the south side asked me to hold up on the north side, and I walked around the end (east end) of the car; and just before I came up to the jackscrew (at which appellee was at work) the car slued. The car did not turn over; I reckon the front end of it moved about twelve inches, or something near that, and then it stopped on the track; the jack on the north side gave way, or the dirt gave way under it, and it caused the car to slue south. * * * I superintended the fixing of the jack on the north side, the jack there was put on the ground on the edge of the dump, and that is the jack that gave way; the dirt was frozen on top, and when the weight came on the jack the frozen earth gave way, and that caused the car to careen to the south. * * * I don't know how much one of these cars would weigh, but I expect it is several tons, some twenty or thirty thousand pounds, I reckon. * * * If I had been standing around there by the north jackscrew, watching the men work that screw, I could have seen [or "might have seen," as he says in another place] whether or not the frozen ground was giving way." Marion Glenn, the section foreman, testified: "The north jack was not right on the edge of that dump. * * * We put one piece of timber under the jack; up to that time [of the accident] we had not make a crib by which to raise the car up, but I think we did afterwards; I don't remember about that. I think when we got the car on we built a crib on each side; if we had done that at first, the car would not have careened; it didn't fall the next time we jacked it up. * * * I don't know whether the king pin was out or

not; I don't think the car could have slipped to one side, unless the king pin was out, or was broken; I don't remember whether the king pin was out or broken at that time; I don't remember about putting in another king pin."

We think the evidence stated authorized the submission of the issues of negligence in failing to warn appellee of the extra hazard involved in the labor undertaken, and of negligence on the part of said foremen in failing to exercise due supervisory care to guard against danger to those engaged in the work, and it is also sufficient to sustain the verdict on such issues. Appellant requested the court to charge the jury to the effect that if they found "that the work of handling a jackscrew in raising a car was not one of great, unusual, and extraordinary danger," then no duty of warning existed. Also, that if the jury should find the use of the jackscrew was extra hazardous, and "plaintiff and the foreman had equal knowledge of the fact," the defendant would not be liable. We think it quite evident that these charges were properly rejected. The right of recovery was predicated upon other grounds, and the charge requested would have been manifestly misleading and erroneous under the facts of the case.

It is also insisted, in substance, that the court was in error in submitting the cause, and in overruling the motion for new trial, in that the evidence shows that the danger involved was not extraordinary, and that the accident was due to the giving way of the frozen ground, the danger of which was as apparent to appellee as to the foreman in charge of the work. In addition to what we have heretofore said, we add that it was not necessary to appellee's right of recovery that the work undertaken was "extraordinarily dangerous." The evidence supports the conclusion that as to appellee it was "extra hazardous," and clearly indicates that appellee was without knowledge thereof, and without warning. If the accident was attributable alone to the failure of the frozen ground to support the jackscrew on the north side, the evidence clearly shows appellee's position and duty was such as that he could not observe the conditions on that side.

We think the judgment should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.